DOMESTIC CREDIT CORP., APPELLANT, *v.* VAZQUEZ ET AL., APPELLEES.

[Cite as Domestic Credit Corp. v. Vazquez (1982), 69 Ohio St. 2d 527.]

(No. 81-572—Decided March 3, 1982.)

528

*Mr. Leonard B. Scharfield* and *Mr. Paul Y. Shapiro,* for appellant.

*Ms. Margaret Terry, Mr. Lloyd B. Snyder* and *Mr. Thomas W. Weeks,* for appellees.

*Per Curiam.* This case presents the question of whether the seller contracted for a charge prohibited by the Ohio Retail Installment Sales Act, R. C. 1317.01 *et seq.,* thus rendering the contract unenforceable. In particular, appellees contend that the default provisions of the contract permit the seller to levy a delinquency charge greater than is allowed under the Act.[1]

---

[1] R. C. 1317.08 provides, in pertinent part:

"No retail installment contract which evidences an indebtedness greater than that allowed by section 1317.06 or 1317.07 of the Revised Code * * *."

Permissible finance charges are established by R. C. 1317.06(A), which provided at the time relevant herein:

"(A) A retail seller at the time of making any retail installment sale may charge and contract for the payment of a finance charge by the retail buyer and collect and receive the same, which shall not exceed the rates as follows:

"(1) A base finance charge at the rate of eight dollars per one hundred dollars per year on the principal balance of the retail installment contract. On retail installment contracts providing for principal balances less than, nor not in multiples of one hundred dollars, or for installment payments extending for a period less than or greater than one year, said finance charge shall be computed proportionately.

"(2) In addition to the base finance charge, the retail seller may charge and contract for a service charge of fifty cents per month for the first fifty dollar unit or fraction thereof, of the principal balance for each month of the term of the installment contract; and an additional service charge of twenty-five cents per month for each of the next five fifty dollar units or fraction thereof, of the principal balance for each month of the term of the installment contract."

Maximum delinquent charges were established by R. C. 1317.06(B):

Appellant contends that the Act does not preclude the holder of the contract from accelerating the maturity of both principal and interest in the event of default by the buyer. For the following reasons, we hold that the contract does not violate the Ohio Retail Installment Sales Act.

The contract entered into by appellees contains the following provisions regarding recourse by the holder in the event of default:

"*Default Charge:* The undersigned agrees that if the obligation hereby evidenced, or any part thereof, is not paid at the maturity thereof, whether such maturity be caused by lapse of time or by acceleration, *such entire obligation* shall thereafter draw straight interest at the rate of 8% per annum until paid: or, at the option of the holder hereof, the holder may collect and receive and undersigned jointly and severally promise to pay late charges calculated the rate of 5¢ for each dollar of any monthly installment shown above which is not paid on or before ten days after the due date thereof, but in no event shall the amount of such late charges for any one defaulted installment exceed three dollars ($3.00), which late

---

"(B) Every retail seller may, at the time of making any retail installment sale, contract for the payment by the retail buyer of lawful delinquent charges as follows:

"(1) No charges shall be made for delinquent payments less than ten days late.

"(2) Five cents for each dollar for a delinquent payment that is more than ten days late may be charged, but in no event shall a delinquent charge for any one installment exceed three dollars.

"A provision for the payment of interest after maturity at a rate not to exceed eight per cent per annum straight interest is not a delinquent charge providing no other charge is made on account of the delinquency."

The first paragraph of R. C. 1317.07 governed both unlawful contractual provisions and unlawful charges:

"No retail installment contract authorized by section 1317.03 of the Revised Code which is executed in connection with any retail installment sale shall evidence any indebtedness in excess of the time balance fixed in the written instrument in compliance with section 1317.04 of the Revised Code, but it may evidence in addition any agreements of the parties for the payment of delinquent charges, as provided for in section 1317.06 of the Revised Code, taxes, and any lawful fee actually paid out, or to be paid out, by the retail seller to any public officer for filing, recording, or releasing any instrument securing the payment of the obligation owed on any retail installment contract. No retail seller, directly or indirectly, shall charge, contract for, or receive from any retail buyer, any further or other amount for examination, service, brokerage, commission, expense, fee, or other thing of value. A documentary service charge customarily and presently being paid on May 9, 1949, in a particular business and area shall not be prohibited if the same does not exceed five dollars per sale."

charges, if imposed and collected by the holder hereof, shall be in lieu of such 8% straight interest on the applicable installment.

*"Default Charge-Acceleration of Maturity of Debt:* The undersigned further agrees that in the event of any default in the payment of any installment hereunder when the same becomes due and/or in any of the conditions or stipulations of the SECURITY AGREEMENT, if any, securing this note, then this note shall immediately become due and payable at the option of the holder hereof without demand or notice. See the reverse side hereof for other grounds for acceleration of this maturity of the debt including acceleration when the Secured Party deems it necessary for its more complete and perfect security." (Emphasis added.)

It is urged by appellant that these clauses entitle the holder of the contract to accelerate the maturity of both principal and interest in the event of default by the buyer.

As pointed out by the Court of Appeals, the Retail Installment Sales Act contains only one reference to contractual provisions which accelerate the maturity date of obligations under the contract:

" * * * No seller shall, pursuant to any provision in a retail installment contract arising out of a consumer transaction, accelerate any payments on account of a default in the making of an installment payment that has not continued for at least thirty days. * * * " R. C. 1317.06(C).

Clearly, this section does not preclude acceleration of interest as well as principal in the event of default. Nor should we imply such a preclusion into the Act, by an act of judicial legislation.

The Ohio Retail Installment Sales Act was adopted in 1949. At no time since its enactment has the General Assembly acted to provide a credit to a retail buyer upon acceleration of the maturity of indebtedness. Moreover, the General Assembly has enacted requirements[2] in the Ohio Small Loan

---

[2] See R. C. 1321.13(D)(3) and 1321.57(D)(3), both of which provide, in pertinent part:

"If the maturity of the loan is accelerated for any reason and judgment is entered, the [licensee or registrant] shall credit the borrower with the same refund as if prepayment in full had been made on the date the judgment is entered."

Act, R. C. 1321.01 through 1321.21, and in the Ohio Second Mortgage Act, R. C. 1321.51 through 1321.60, which preclude refund credit from being given to a borrower, after acceleration, until a judgment is entered. The General Assembly could have enacted a similar requirement in the Retail Installment Sales Act but has declined to do so. In determining legislative intent of a statute, a court must not insert words not used. *Wheeling Steel Corp.* v. *Porterfield* (1970), 24 Ohio St. 2d 24, 28. To find for appellees would be to write a substantive amendment into the Act which is solely within the province of the General Assembly.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

CELEBREZZE, C. J., concurring. Based upon the facts in this case, I concur in the judgment only. I would like to set forth several salient points not addressed by the majority opinion.

The majority concludes that the Ohio Retail Installment Sales Act does not provide a credit to a retail buyer upon acceleration of the maturity of the indebtedness. Although the statutes do not specifically state that upon acceleration, a rebate of the finance charge for the accelerated payments is required, there are provisions which can be construed to reach this result.

Initially, R. C. 1317.01(N) defines finance charge as:

" 'Finance charge' means the amount which the retail buyer pays or contracts to pay the retail seller for the privilege of paying the principal balance in installments over a period of time. Any advancement in the cash price ordinarily charged by the retail seller is a finance charge when a retail installment sale is made."

In essence, a buyer may be charged a fee or finance charge for the privilege of repaying the principal balance over a time period. In this case, the finance charge was based upon repayment over a 24-month term. According to the definition, the

finance charge is predicated upon repayment over the entire specified period of time. Therefore, when the repayment is accelerated, there is no basis for a finance charge for those months not yet due, but called early. Otherwise, a buyer is paying a finance charge for a privilege not received and paying for time not yet expired.

Another provision which could require a rebate of the finance charge to the buyer upon acceleration is R. C. 1317.09. This section clearly mandates a refund of a portion of the finance charge. Although it has been used for voluntary prepayments, the language could easily be interpreted to include involuntary prepayments or accelerations. In this case, the contract provided a formula to rebate the finance charge on the installments paid before due.

The legislative purpose of the Retail Installment Sales Act also should be considered. In *Teegardin* v. *Foley* (1957), 166 Ohio St. 449, 453, this court stated that R. C. Chapter 1317 was enacted to correct certain abuses in the financing of new and used automobiles. The unregulated abuses amounted to "fraud on the general public in the nature of hidden and disguised profits * * * ." This is the situation presented in the case *sub judice*. The acceleration of the finance charge was hidden as it was not disclosed in the credit contract and results in a profit to the creditor.

Furthermore, this lack of disclosure in the credit contract does not comply with the federal Truth in Lending Act.[3] The act requires specific disclosure of the acceleration rebate policy when it differs from the custom with respect to voluntary prepayment. *Ford Motor Credit Co.* v. *Milhollin* (1980), 444 U. S. 555, 562. The purpose of the act is to assure a meaningful disclosure to the consumer of credit terms, so as to avoid uninformed use of financing charges. *Flesher* v. *Household Finance* (C. A. 6, 1981), 640 F. 2d 861, 863.

---

[3] Section 1601 *et seq.*, Title 15, U. S. Code.